**In the United States District Court
for the District of Kansas**

---

Case No. 24-cr-40032-TC

---

UNITED STATES OF AMERICA,

*Plaintiff*

v.

JASON JAMES JONES,

*Defendant*

---

**MEMORANDUM AND ORDER**

A grand jury indicted Jason James Jones on one count of possession with intent to distribute a mixture or substance containing methamphetamine in violation of 21 U.S.C. § 841(a)(1). Doc. 1. Jones now moves to suppress all physical evidence seized during a traffic stop and other evidence discovered as a result of that stop. Doc. 21 at 5. For the following reasons, Jones's motion is denied.

**I**

**A**

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV; *see also New Jersey v. T.L.O.*, 469 U.S. 325, 334 (1985) (recognizing incorporation against the states). Absent a recognized exception, the Fourth Amendment prohibits suspicionless seizures or warrantless searches that violate a person's objectively reasonable expectation of privacy by invading a constitutionally protected space or thing. *United States v. Jones*, 565 U.S. 400, 406 (2012); *see also United States v. Ackerman*, 831 F.3d 1292, 1307 (10th Cir. 2016). Traffic stops are seizures for Fourth Amendment purposes, *United States v. Pettit*, 785 F.3d 1374, 1379 (10th Cir. 2015), and in a traffic stop "a passenger is seized as well and so may challenge the

constitutionality of the stop." *Brendlin v. California*, 551 U.S. 249, 251 (2007).

A warrantless stop is valid where the officer has reasonable suspicion to believe that a traffic violation occurred. *Kansas v. Glover*, 589 U.S. 376, 380 (2020). In particular, the officer must have "a reasonable articulable suspicion that 'this particular motorist violated any one of the multitude of applicable traffic and equipment regulations of the jurisdiction.'" *United States v. Martinez*, 512 F.3d 1268, 1272 (10th Cir. 2008) (quoting *United States v. Ozbirn*, 189 F.3d 1194, 1197–98 (10th Cir. 1999)). The stop also must be "reasonably related in scope to the circumstances which justified the interference in the first place." *United States v. Morales*, 961 F.3d 1086, 1090–91 (10th Cir. 2020).

Ordinarily, the traffic stop is circumscribed by the traffic violation giving rise to the initial encounter. That means officers may conduct unrelated inquiries during a stop only if that conduct does not prolong the stop. *United States v. Frazier*, 30 F.4th 1165, 1173 (10th Cir. 2022) (citing *Rodriguez v. United States*, 575 U.S. 348, 355 (2015)). For example, it is accepted that officers may reasonably inquire as to the driver's license, automobile's registration and proof of insurance, identity of the individuals, and driver's travel plans. *United States v. Cates*, 73 F.4th 795, 806 (10th Cir. 2023) (internal citations omitted). But once the mission of the stop has concluded, the motorist is generally free to leave. *Morales*, 961 F.3d at 1091.

There are, of course, justifications for continued detention. For example, the driver may consent to further questioning. *United States v. Ledesma*, 447 F.3d 1307, 1315 (10th Cir. 2006). Or an officer may develop reasonable suspicion of other illegal activity distinct from the traffic violation. *See United States v. Bradford*, 423 F.3d 1149, 1157–58 (10th Cir. 2005). "To satisfy the reasonable suspicion standard, an officer need not 'rule out the possibility of innocent conduct,' or even have evidence suggesting 'a fair probability' of criminal activity." *United States v. Pettit*, 785 F.3d 1374, 1379 (10th Cir. 2015) (internal citations omitted). A non-exhaustive list of factors that the Tenth Circuit has recognized as supporting reasonable suspicion include nervousness, unusual travel plans, criminal history, and travel route. *See United States v. White*, 584 F.3d 935, 950–52 (10th Cir. 2009); *see also Pettit*, 785 F.3d at 1380–1383 (holding that no one factor is determinative of reasonable suspicion of illegal activity). Accordingly, an officer who develops reasonable suspicion of illegal activity "may initiate an investigatory detention even if it is more likely than not that the individual is *not*

involved in any illegality." *Pettit*, 785 F.3d at 1379–80 (quoting *United States v. Johnson*, 364 F.3d 1185, 1194 (10th Cir. 2004)) (emphasis in original).

As a general matter, the authority to detain a motorist while investigating the reasonable suspicion does not include the right to search the vehicle. Instead, a search of the vehicle must be justified by, for example, probable cause. *United States v. Forbes*, 528 F.3d 1273, 1277–78 (10th Cir. 2008); *see also United States v. Pinder*, 121 F.4th 1367, 1371 (10th Cir. 2024) (allowing contemporaneous search incident to a lawful arrest). "Probable cause to search a vehicle is established if, under the totality of the circumstances, there is a fair probability that the car contains contraband or evidence." *United States v. Phillips*, 71 F.4th 817, 823 (10th Cir. 2023) (quoting *United States v. Vasquez-Castillo*, 258 F.3d 1207, 1212 (10th Cir. 2001)). When an officer smells drugs, such as raw marijuana emanating from the vehicle, that observation is "entitled to substantial weight in the probable cause analysis and can be an independently sufficient basis for probable cause." *United States v. West*, 219 F.3d 1171, 1178 (10th Cir. 2000). Additional observations—such as nervous behavior and vague travel plans—obviously strengthen the existence of probable cause. *See United States v. Ozbirn*, 189 F.3d 1194, 1200 (10th Cir. 1999).

**B**

On May 31, 2023, Deputy Thomas Umeck of the Geary County Sheriff's Office was on patrol and traveling eastbound on Interstate 70 between mile markers 290 and 305.[1] He testified that the roadway was wet from precipitation and that it was lightly raining. While traveling in the left lane, he noticed a white Nissan Sentra following a white Sprinter van traveling between 40 to 50 feet in front of him in the right lane. Using the dividing line to time the distance between the Sentra and the van, Umeck first observed the Sentra following the van at a distance less than two seconds, in violation of K.S.A. § 1523(a). He then observed the Sentra enter the left lane, overtake the Sprinter van, and merge back into the right lane in front of the van at a distance less than two seconds, in violation of K.S.A. § 1516(a).

---

[1] The following facts were found based on the witness's testimony and the evidence produced at the suppression hearing.

3

Case 5:24-cr-40032-TC   Document 29   Filed 10/24/25   Page 4 of 11

After observing these two traffic infractions, Umeck initiated a traffic stop. He approached the passenger side of the Sentra and observed three individuals. A female passenger sat in the front passenger seat, and a male passenger sat in the backseat behind her. Defendant Jason Jones was driving. Approaching the passenger side of the vehicle, Umeck asked Jones for his driver's license and insurance and asked the group about their travel plans. Jones provided Umeck a driver's license that (unknown to Umeck at the time) belonged to his brother, Tyrone Alphonso Jones. Throughout the course of the encounter Jason Jones portrayed himself as his brother, Tyrone.[2] Umeck testified that he could smell the faint odor of raw marijuana coming from the vehicle while he spoke with the car's occupants.

The initial conversation between Umeck and the occupants regarding their travel plans was both active and interactive. Umeck asked Jones, "where are you guys coming from?" and then, "where are you guys heading to?" Jones replied that they were heading to Springfield, Missouri. Then, Umeck asked, "what are you guys going out there for?" Jones responded that he lived in Springfield, Missouri, and then asked Umeck if he had ever been there. Umeck responded that he had never been to Springfield, that he was from Los Angeles, and then asked, "have you ever been out to the West Coast before?"

Umeck asked Jones to join him in the patrol vehicle so he could write him a warning ticket and Jones obliged. While he was writing the warning citation, Umeck asked Jones several questions about the rental agreement. Still posing as Tyrone, Jason Jones told Umeck that his brother, Jason Jones, was the renter named on the rental agreement and rented the vehicle for him, but that Jason Jones was not in the vehicle.[3] Jones then asked if he was getting a ticket and Umeck responded that he was only writing a warning. Then, Umeck asked some follow-up questions related to Jones's travel plans, one of which was to ask Jones if he knew people in Colorado. About nine minutes into the stop, Umeck contacted dispatch to request information about the

---

[2] After the stop, Umeck learned that the driver was actually Jason Jones.

[3] The Government argues in its brief that Umeck had an objective basis for his reasonable suspicion that Jones, while posing as Tyrone, was exerting unauthorized control over the vehicle. Doc. 24 at 18. But the Government's brief and the hearing testimony are devoid of any objective facts supporting objectively reasonable suspicion on that basis.

4

purported driver, Tyrone Jones, and the vehicle. Umeck testified that the process he used for this stop—filling out the warning ticket and then contacting dispatch with the driver's information—is the way he handles every citation and/or warning because he fills out the form from top to bottom and that is the order in which the form seeks that information.

Approximately one minute later, dispatch reported to Umeck that the Sentra's registration had expired. Umeck believed the expired registration report from dispatch was incorrect because it would be highly unusual for the registration on a rental vehicle to be expired. To confirm his instinct and rebut the information provided by dispatch, Umeck exited his patrol vehicle and reapproached the Sentra to look at the registration sticker on its license plate. While at the vehicle, Umeck also spoke to the female passenger about the group's travel plans, and once again smelled the odor of marijuana coming from the vehicle's window, testifying that this time the smell seemed much stronger. After speaking with the female passenger, Umeck returned to the patrol vehicle to finish filling out the warning citation. As he did so, Umeck explained to Jones that he could smell the odor of marijuana and planned to search the vehicle, and he called for another officer to come to his location to assist with the search.

Ultimately, Umeck searched the Sentra while Jones and his two passengers sat in the patrol car. Umeck found a bag of raw marijuana in the vehicle's center console and a "white bag containing a brown plastic bag wedged between the spare tire and the rear wall of the trunk." Within that brown plastic bag, Umeck found "a large plastic bag containing a white crystalline substance believed to be a controlled substance."

Based on this discovery, the officers arrested all three individuals and transported them to the Geary County station. Then, law enforcement officers read Jones his *Miranda* rights and interviewed him about the contraband that they located. During that interview, Jones admitted his involvement in drug distribution. The officer subsequently sought a warrant for Jones's cellphone for additional evidence of drug distribution. And, upon further search of the Sentra, officers discovered more illegal drugs: baggies of marijuana and MDMA on the rear passenger seat floorboard under the front passenger seat and a small plastic bag containing suspected cocaine inside the female passenger's white purse.

Jones now moves to suppress the evidence seized from the Sentra on two grounds. Doc. 21.[4] He argues that Umeck lacked reasonable suspicion to initiate the traffic stop and unreasonably prolonged the traffic stop without reasonable suspicion that ongoing criminal activity was occurring. *Id.* The Government opposes each argument. Doc. 24. These arguments were fully addressed at an evidentiary hearing. Doc. 28.

## II

Contrary to Jones's arguments, Umeck had reasonable suspicion to stop the vehicle. And the length of that stop was not unreasonable given the events that unfolded. As a result, Jones's motion to suppress is denied.

### A

Jones first argues that the stop was unlawful. Doc. 21 at 6. That argument fails because Umeck had two independent bases to believe the Sentra violated Kansas traffic laws.

Umeck's testimony and recorded video evidence confirm that he had reasonable suspicion to believe that Jones violated two Kansas traffic laws. One forbids following other vehicles too closely. Kan. Stat. Ann. § 8-1523(a) ("The driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of such vehicles and the traffic upon and the condition of the highway."). The other directs when an overtaking vehicle may safely return to the lane of travel. Kan. Stat. Ann. § 8-1516(a) ("The driver of a vehicle overtaking another vehicle proceeding in the same direction shall pass to the left thereof at a safe distance and shall not again drive to the right side of the roadway until safely clear of the overtaken vehicle.").

Uncontroverted testimony offered at the suppression hearing confirms there was reasonable suspicion to believe the Sentra violated both statutes. Umeck generally described two different methods he has used in other situations to determine whether a car is following someone at a reasonable distance by considering weather conditions, speed,

---

[4] All document citations are to the document and page number assigned in the CM/ECF system.

and traffic: measuring car lengths and the two-second rule. With the Sentra, he used the two-second rule, which he described as using the broken white lines dividing the lanes to time the distance between the front vehicle and the one behind it. In particular, he testified that the Sentra both followed the van closer than two seconds and then, after overtaking the van, pulled back in front of it too soon. This is sufficient to create reasonable suspicion under Kansas law for both statutes. *See United States v. Nichols*, 374 F.3d 959, 965 (10th Cir. 2004), *vacated on other grounds*, 543 U.S. 1113 (2005) (applying two-second rule to Section 8-1523(a)); *United States v. White*, 584 F.3d 935, 946 (10th Cir. 2009) (applying two-second rule to Section 8-1516(a)).

The road conditions at the time strengthened Umeck's belief. He testified (and the in-car video of the stop confirmed) that on the day of the traffic stop, the roadway was wet from precipitation and it was lightly raining as the stop was made. Umeck believed that the weather conditions warranted a greater distance between the vehicles than what he observed. That conclusion is supported by Kansas law. *See State v. Moore*, 154 P.3d 1, 7 (Kan. 2007) (approving Tenth Circuit's two-second rule for Section 8-1523(a) violations and acknowledging the rule was established in light of speed, following distance, road conditions, and traffic conditions).

Jones opposes this conclusion, pointing to the fact the van did not hit its brakes when the Sentra overtook it as an indication that he did not impermissibly merge in front of the van in violation of K.S.A. § 8-1516(a). Doc. 21 at 2. That argument fails. For one thing, the standard is reasonable suspicion, not proof beyond a reasonable doubt. *See United States v. Vercher*, 358 F.3d 1257, 1263 (10th Cir. 2004) (explaining that evidence sufficient to effectuate a traffic stop may not be sufficient to convict). For another, it seeks to give dispositive weight to a single factor—to the detriment of the other conditions observed by Umeck—in a way that is akin to the divide-and-conquer analysis that is never appropriate on a reasonable suspicion inquiry. *See United States v. Arvizu*, 534 U.S. 266, 274 (2002) (rejecting appellate court finding that there was no reasonable suspicion for stopping the vehicle because the court used a divide-and-conquer analysis instead of a totality of the circumstances approach). Although *White* recognized that the overtaken vehicle had hit its brakes when the overtaking vehicle returned to the right lane, that was not a dispositive factor. *Contra* Doc. 21 at 7. Instead, the Tenth Circuit affirmed the district court's finding that the state trooper had reasonable suspicion to believe the driver violated

7

K.S.A. § 8-1516(a) where the driver cut in front of another vehicle traveling 70 miles per hour, leaving 3 to 4 car lengths—or approximately one second—between the vehicles, which caused the overtaken vehicle to hit its brakes.

Nor is there evidence to suggest that Umeck provoked the violation. Specifically, Jones claims that Umeck came behind him in the left lane, causing him to impermissibly and prematurely merge in front of the van. *See* Doc. 21 at 7. The Tenth Circuit has explained that even if an officer's actions are a "but-for" cause of the traffic violation, the traffic stop is still valid if a reasonable driver would not have needed to commit the traffic violation to react to the officer's behavior. *United States v. Worthon*, 520 F.3d 1173, 1180 (10th Cir. 2008); *accord United States v. Murdoch*, No. 23-40037, 2025 WL 564195, at *12–13 (D. Kan. Feb. 20, 2025). The testimony and video of the encounter confirm that Jones did not need to commit a traffic violation to avoid Umeck's patrol vehicle, as Umeck was well behind not only the Sentra but also the van the Sentra was overtaking. As a result, Umeck's conduct did not require Jones to violate Kansas law. *See, e.g.*, *United States v. Ozbirn*, 189 F.3d 1194, 1198–99 (10th Cir. 1999) (concluding the officer "did not contribute to causing the [vehicle] to drift onto the shoulder").

**B**

Jones also argues that Umeck unreasonably extended the stop. Doc. 21 at 7 (invoking *Rodriguez v. United States*, 575 U.S. 348 (2015)). Specifically, he contends that at various points Umeck lacked a lawful basis to extend the stop. That argument also fails.

As noted, a traffic stop constitutes a Fourth Amendment seizure and, as a result, must be reasonable. *United States v. Baker*, 108 F.4th 1241, 1246 (10th Cir. 2024). This means it must be "justified at its inception and … the officer's actions during the stop must be reasonably related in scope to 'the mission of the stop itself.'" *Id.* (quoting *United States v. Mayville*, 955 F.3d 825, 829 (10th Cir. 2020). In *Rodriguez*, the Supreme Court held that a traffic stop "becomes unlawful if it is prolonged beyond the time reasonably required to complete" the stop. *Baker*, 108 F.4th at 1246–47 (citing *Rodriguez*, 575 U.S. at 350–51) (internal citations omitted). And while there is no de minimis exception to the rule, *Mayville*, 955 F.3d at 830, the question is only whether "police diligently pursued the [traffic] investigation," *Rodriguez*, 575 U.S. at 354, and not whether they took the quickest route humanly possible to

8

concluding the stop. *Mayville*, 955 F.3d at 827. Thus, courts are not permitted to "second-guess the logistical decisions of officers so long as their actions were reasonable and diligently completed within the confines of a lawful traffic stop[ ] … because reasonableness—rather than efficiency—is the touchstone of the Fourth Amendment." *Id.*

The Tenth Circuit has established a three-part test for analyzing the lawfulness of a delay under *Rodriguez*: In particular, an unlawful seizure occurs when an officer diverts from the traffic-based mission of the stop to investigate ordinary criminal conduct, does so in a way that 'prolongs' (i.e., adds time to) the stop, and the investigative detour is unsupported by any independent reasonable suspicion. *Baker*, 108 F.4th at 1248 (quoting *United States v. Frazier*, 30 F.4th 1165, 1173 (10th Cir. 2022)); *accord United States v. Buie*, No. 24-11916, 2025 U.S. App. LEXIS 27250, at *10–11 (11th Cir. Oct. 20, 2025) (noting that the focus is on whether the officer created a delay and confirming that delays caused by the driver are not considered for purposes of *Rodriguez*). In other words, "the government prevails if the officers' actions did not divert from the traffic mission, the search was not prolonged, or reasonable suspicion existed." *Baker*, 108 F.4th at 1248. An officer may extend the stop if he or she has, at a minimum, reasonable suspicion of criminal wrongdoing. *Id.* at 1247 (citing *Mayville*, 955 F.3d at 830).

Jones's *Rodriguez* argument fails for at least two reasons. *First*, Umeck had reasonable suspicion—if not probable cause to search—to investigate the presence of marijuana based on the initial contact when he smelled raw marijuana. *United States v. Hayes*, 62 F.4th 1271, 1280 (10th Cir. 2023) (explaining that any extension of the initial stop was irrelevant after law enforcement established probable cause to search the vehicle). Under controlling law, an officer may extend a traffic stop beyond its traffic-based mission if the officer "acquire[s] a particularized and objective basis for suspecting the particular person stopped of criminal activity." *United States v. Kitchell*, 653 F.3d 1206, 1217–18 (10th Cir. 2011) (internal citations omitted). Umeck credibly testified as to his initial detection of marijuana when he first approached the vehicle. While possession of marijuana might not offend either Colorado's or Missouri's laws, it remains prohibited under Kansas law. Kan. Stat. Ann. § 21-5706(b)(3); Doc. 24-1 at 3:57 (noting that Jones was coming from Colorado and heading to Missouri).

Umeck testified that he had reasonable suspicion of criminal activity based on his initial detection of marijuana when he first approached the vehicle. Moreover, Umeck testified his suspicion was heightened

9

by other attendant circumstances, including Jones's inability to say exactly where he went and who he saw on his one-day trip to Colorado—which Umeck describes as a long-distance, short-duration trip common with criminal activity—and the back passenger's refusal to make eye contact with him. This gave Umeck additional justification to expand the mission by investigating the possibility that one or more occupants of the vehicle were engaged in drug-related crimes and confirmation of the raw marijuana odor when he approach the Sentra a second time established probable cause to search the vehicle. *United States v. Ozbirn*, 189 F.3d 1194, 1199 (10th Cir. 1999) (finding reasonable suspicion and probable cause based on strong odor of raw marijuana emanating from vehicle, driver and passenger behavior, and vague description of travel plans).

*Second*, video evidence and testimony confirm that Umeck did not unreasonably extend the stop. Jones's detention for the traffic infractions lasted approximately 13 minutes. During that time, Umeck approached the vehicle two times (first to make contact with the driver and the second time to dispel the report that the registration had expired), discussed with Jones the observed traffic violations, asked Jones and his occupants about their travel plans, checked the driver's license and rental agreement, shared with dispatch the collected information to run standard searches, and completed the written warning. All of these activities fall within the ordinary tasks permitted during a lawful stop. *See, e.g.*, *Rodriguez*, 575 U.S. at 355–57.

Jones has failed to identify any unlawful detour from the mission of the stop. *Contra* Doc. 21 at 7–9. For example, he argues that Umeck impermissibly delayed the stop by asking him travel plan questions during the initial conversation and again while completing the warning. Doc. 21 at 9. But such questions fall comfortably within accepted practice of a traffic stop. *United States v. Cates*, 73 F.4th 795, 806 (10th Cir. 2023) (explaining that officers may lawfully ask about the driver's travel plans and the identity of the individuals in the vehicle). Indeed, the conversation was a lively, two-way encounter with Umeck and Jones asking each other questions within the scope of that encounter.

Jones's complaint that Umeck should have called dispatch earlier also fails. *Contra* Doc. 21 at 9. Essentially he contends that Umeck should have called dispatch before working on the citation, surmising that this would have reduced the length of his detention. But Umeck testified it is his standard practice when completing a warning or citation to start at the top of the ticket book and run the driver's license

through dispatch when he reaches the driver's license section on the form. There is no evidence to suggest that this process unreasonably delayed the encounter. Indeed, the Tenth Circuit has repeatedly recognized that *Rodriguez* does not require courts to second-guess the officer's reasonable logistical decisions diligently completed during the stop. *See Mayville*, 955 F.3d at 827 (concluding no *Rodriguez* violation where officer chose to search criminal history through dispatch instead of through the use of the computer in his car). And, even if Umeck had followed the course of conduct Jones now champions, the length of detention would have been the same because Umeck would still have had to exit his vehicle to investigate the allegedly expired registration.

## III

For the foregoing reasons, Jones's Motion to Suppress Evidence, Doc. 21, is DENIED.

It is so ordered.

Date: October 24, 2025             s/ Toby Crouse
                                   Toby Crouse
                                   United States District Judge